# IN THE COURT OF APPEALS OF IOWA

No. 21-0206
Filed August 17, 2022

**STATE OF IOWA,**
          Plaintiff-Appellee,

**vs.**

**ROBERT CONWAY, III,**
          Defendant-Appellant.
_____

          Appeal from the Iowa District Court for Grundy County, Bradley J. Harris,

Judge.


          A defendant appeals his conviction for lascivious acts with a minor.

**AFFIRMED.**


          Jennifer Frese of Kaplan & Frese, LLP, Marshalltown, for appellant.

          Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee.


          Considered by Vaitheswaran, P.J., Chicchelly, J., and Gamble, S.J.*

          *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**GAMBLE, Senior Judge.**

Robert Conway appeals his convictions for lascivious conduct with a minor. He claims the district court abused its discretion by excluding evidence under the rape-shield law and admitting evidence of his silence. He also claims the court should have granted his motion for new trial based on the inconsistency in the verdicts.[1] We affirm.

**I. Background Facts and Prior Proceedings**

In March 2018, law enforcement became aware of allegations that Conway sexually abused H.W. in 2017. Kirk Dolleslager, the chief deputy of the Grundy County Sheriff's department, contacted Conway as part of the investigation. He informed Conway of the sexual abuse allegations, and Conway said he would "get back ahold of" Dolleslager. Dolleslager called Conway three times in an attempt to speak with him, but was not successful in contacting Conway again.

The State eventually charged Conway with sexual abuse in the third degree (count I); sexual exploitation of a minor (count II); telephone dissemination of obscene material to a minor (count III); and lascivious acts with a minor (count IV).

---

[1] Conway also makes passing reference to a proposed instruction the district court declined to submit to the jury. It stated,

> [I]n this case you heard evidence that the defendant did not return calls from law enforcement. The defendant is under no obligation to cooperate with law enforcement, and no inference of guilty shall be drawn from that fact. The burden of proof remains upon the State to prove the guilt of the defendant.

However, Conway does not develop an argument as to how the court erred in denying this instruction. So this claim is waived. *See State v. Louwrens*, 792 N.W.2d 649, 651 n.1 (Iowa 2010) ("[P]assing reference to an issue, unsupported by authority or argument, is insufficient to raise the issue on appeal.").

In anticipation of trial, Conway filed a "notice of intent to proffer evidence pursuant to Iowa Rule of Evidence 5.412," Iowa's rape-shield law. He claimed H.W. had made prior false "allegations of sexual abuse against several people." The district court held a pre-trial hearing on the matter and issued a written order. In its ruling, the court determined that Rule 5.412 was inapplicable to some of the proposed evidence because it did not relate to the sexual conduct of H.W. and it prohibited introduction of the remaining proposed evidence because Conway failed to show by a preponderance of the evidence that H.W.'s prior allegations were false.

The morning of trial, Conway argued[2] (outside the presence of the jury) that any references to him telling Chief Deputy Dolleslager that he would speak to a lawyer or that he did not call Dolleslager back would implicate his right to counsel and right to remain silent so those statements should be prohibited. He also claimed the statements were not relevant and even if they were, they could not pass a Rule 5.403 balancing test. The State clarified that it did not intend to offer the fact that Conway referenced an attorney—only "that he had stated that he would get back to [Dolleslager] and did not." The court determined it would allow testimony that Conway was aware of the investigation and that he did not return phone calls but prohibited references to Conway wanting to contact an attorney.

With that, the jury trial commenced, and Conway testified in his own defense. Following submission of the case to the jury, it returned not guilty verdicts

---

[2] From the transcript, we understand defense counsel sent an email containing a corresponding written argument to the trial judge and the prosecutor. However, it appears counsel never filed anything through EDMS, so we do not have access to counsel's written arguments.

on counts I, II, and III. However, the jury found Conway guilty of count IV. In response, Conway filed a motion for new trial claiming, among other things, that the jury's verdicts were inconsistent. The court denied the motion, finding that the verdicts were not inconsistent.

Conway appeals.

## II. Standard of Review

When reviewing Conway's various claims, we employ varying standards of review. "We review trial court rulings on admissibility of evidence under rule 5.412 in criminal prosecutions for abuse of discretion." *State v. Alberts*, 722 N.W.2d 402, 407 (Iowa 2006). So "[r]eversal is warranted only upon showing the 'court exercise[d] its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Id.* at 408 (alteration in original) (citation omitted). To the extent a claim takes on a constitutional dimension, our review is de novo. *State v. Cox*, 781 N.W.2d 757, 760 (Iowa 2010). "The consequence of a potentially inconsistent jury verdict is a question of law, and accordingly, our review is de novo."[3] *State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa 2021) (citation omitted).

---

[3] Normally, our review of questions of law is for errors of law. *See State v. Allen*, 965 N.W.2d 909, 911 (Iowa 2021). However, the supreme court has stated, "[T]he question of the validity of an inconsistent verdict . . . can be approached only with due regard to important constitutional concepts including double jeopardy, guilt beyond a reasonable doubt, and the right to a unanimous jury verdict." *State v. Halstead*, 791 N.W.2d 805, 808 (Iowa 2010). "To the extent constitutional issues are raised, review is de novo." *Id.* at 807.

## III. Discussion

### A. The Rape-Shield Law

First, Conway claims the district court abused its discretion when it prevented him from presenting evidence that H.W. made prior false allegations of sexual activity.

Generally, the rape-shield law prevents a defendant from introducing evidence of a complaining witness's prior sexual activity. *See* Iowa R. Evid. 5.412(a). *But see* Iowa R. Evid. 5.412(b) (providing limited exceptions to the prohibition). However, the "false claims of sexual activity do not fall within the coverage of our rape-shield law." *Alberts*, 722 N.W.2d at 409. So for a defendant to be able to introduce a complaining witness's false allegations of sexual activity, they "must first make a threshold showing to the trial judge outside the presence of the jury that (1) the complaining witness made the statements and (2) the statements are false, based on a preponderance of the evidence." *Id.*

Here, Conway argues he established by a preponderance of the evidence that H.W. made false allegations of sexual activity involving three people (Kain Redix, Chris Conway, and Tim Hampton) that should have been permitted.[4] We disagree.

First, as the district court pointed out, the rape-shield law is inapplicable to the evidence Conway wished to present regarding Kain. Conway wanted to introduce evidence H.W. claimed Kain made sexually explicit statements to her

---

[4] Of course even if the proposed evidence was not prohibited by the rape-shield law, it would still "remain subject to all other applicable evidentiary requirements and considerations." *Alberts*, 722 N.W.2d at 410 (citation omitted).

and she ran away but Kain denied the exchange ever occurred. This does not involve any allegations of H.W.'s sexual activity, so the rape-shield law is not applicable and would not prohibit this evidence, which the district court made clear in its ruling. Specifically, the court "determine[d] that Rule 5.412 is not applicable to this evidence. The evidence may therefore be admissible if it meets all other applicable evidentiary requirements and considerations." So the district court's ruling did not prevent Conway from introducing this evidence. Yet Conway never attempted to introduce the evidence at trial. So there is nothing for Conway to appeal.

Second, as to Chris and Tim, Conway failed to establish H.W. made false statements about sexual activity involving either person by a preponderance of the evidence. With respect to Tim, Conway claimed H.W. made false claims that she and Tim touched each other's genitals. But Conway only offered Tim's denial in an attempt to show H.W.'s claims were false. And Tim sent H.W. sexually suggestive text messages., casting doubt on his denial. With respect to Chris, Conway offered H.W.'s mother's testimony wherein she stated the Iowa Department of Human Services (DHS) investigated the claims against Chris and determined the claims were unfounded. However, H.W. explained that her mother talked to DHS before she did and told them a different story than she shared, so DHS determined there was not enough consistency between them to determine the incident was founded. H.W. stated the issue was that her mother just didn't really listen to her. And at the preliminary hearing, H.W.'s recounting of her sexual contact with Chris remained consistent with her prior allegations. So Conway failed to establish that H.W.'s claims against Tim and Chris were false by a

preponderance of the evidence, and the district court did not abuse its discretion in determining Rule 5.412(1) prevented introduction of this evidence.

### B. Conway's Lack of Cooperation

Next Conway argues the district court should have prohibited the State from presenting evidence that he did not return Dolleslager's phone calls because it infringed on his constitutional right to remain silent.[5]  He likens his prearrest avoidance of law enforcement to a person's silence following arrest or refusal to testify at trial.  But he presents no authority explicitly supporting his contention that a defendant's prearrest avoidance of law enforcement is off limits at trial.[6]

Rather in *Jenkins v. Anderson*, the Supreme Court determined "the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility."  447 U.S. 231, 238 (1980).  It also held "impeachment by use of prearrest silence does not violate the Fourteenth Amendment."  *Id.* at 240. This dispels Conway's notion that there is an absolute bar on evidence of his prearrest silence.  *See State v. Goodrich*, No. 00-1644, 2002 WL 984477, at *4

---

[5] Conway does not make clear whether he is bringing his claim under the state or federal constitution.  Likewise he does not ask us to apply a differing standard than that applied under the Fifth Amendment to the United States Constitution, so we apply federal standards.  *See State v. Dewitt*, 811 N.W.2d 460, 467 (Iowa 2012).

[6] The State suggests Conway's claim is most akin to alleging a *Doyle v. Ohio* violation.  426 U.S. 610 (1976).  In *Doyle* the defendant was pressed at trial about why he didn't tell the arresting investigator that he was innocent or explain what happened.  *Id.* at 614.  The prosecution argued that the defendant's silence could be discussed to show the defendant's explanation at trial was fabricated at some point because he did not disclose it right away.  *Id.* at 616–17.  The Supreme Court rejected that contention and instead held that a defendant's silence at the time of arrest and post *Miranda* warning, even for impeachment purposes, violates the Due Process Clause of the Fourteenth Amendment.  *Id.* at 619.  The present case differs significantly in that Conway's avoidance of law enforcement occurred *prior* to any arrest or *Miranda* warning.

(Iowa Ct. App. May 15, 2002) (citing *Jenkins*, 447 U.S. at 235–38). And we have previously held testimony about an investigator's inability to complete a prearrest interview with a defendant was permissible "when viewed in the context of the defense's trial strategy" because "[t]he primary strategy was to impeach the quality of the police's investigation." *State v. Werner*, No. 16-1315, 2017 WL 2684348, at *2 (Iowa Ct. App. June 17, 2017). That is what happened here—the defense strategy was to attack the thoroughness of the investigation. For example, in opening statements, defense counsel told the jury, "[Y]ou heard the prosecutor talk about what they didn't do. This case went from allegation to jury." Conway criticized the investigation throughout the trial. And in closing argument defense counsel asserted, "Now, the investigation in this case is absolutely deplorable." So given "the context of the defense's trial strategy," evidence of Conway's prearrest avoidance of law enforcement preventing them from interviewing him was permissible to meet Conway's attack on the investigation. *See id.*

### C. Inconsistent Verdicts

Finally we address Conway's contention that the verdicts were inconsistent. "A jury verdict may be deemed inconsistent based upon inconsistent application of facts or inconsistent application of the law." *Halstead*, 791 N.W.2d at 807. A verdict is factually inconsistent when "[t]here is no legal flaw in the jury's verdict, but the verdicts seem inconsistent with the facts." *Id.* A verdict is legally inconsistent when a defendant is convicted of a compound crime but acquitted on all predicate offenses. *Id.*

Here, it appears Conway is claiming the verdict is factually inconsistent rather than legally inconsistent. But "our case law prohibits only legally

inconsistent verdicts," so Conway's conviction for lascivious acts with a minor is not invalid. *See State v. Huffman*, No.13-1058, 2014 WL 3931416, at *4 (Iowa Ct. App. Aug. 13, 2014). To the extent Conway claims legal inconsistency, he is not successful. None of the counts he was acquitted of (third-degree sexual abuse, sexual exploitation of a minor, and telephone dissemination of obscene material to a minor) are predicate offenses of lascivious acts with a minor (the offense for which he was convicted). *Compare* Iowa Code §§ 709.4(1)(b)(3)(a) (third-degree sexual abuse), 728.12(3) (sexual exploitation for a minor), .15(1)(b) (telephone dissemination of obscene material to a minor), *with* Iowa Code § 709.14 (lascivious conduct with a minor). And for good measure, our review of the marshalling instructions confirms Conway could commit lascivious acts with a minor as instructed without committing the remaining three charged offenses. *Halstead*, 791 N.W.2d at 815. The verdicts are not factually or legally inconsistent. Therefore, Conway is entitled to no relief.

**IV. Conclusion**

We affirm Conway's conviction for lascivious acts with a minor.

**AFFIRMED.**